UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-11986-RGS

MONA LISA HINTON

v.

BOSTON SCIENTIFIC CORPORATION

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT

January 29, 2024

STEARNS, D.J.

Boston Scientific Corporation designed, manufactured, marketed, and sold the Obtryx II Transobturator Mid-Urethral Sling System (the Product) to treat urinary incontinence and pelvic organ prolapse. A doctor surgically implanted the Product into plaintiff Mona Lisa Hinton on August 21, 2019. Less than two months later, the Product was explanted after Hinton suffered severe pelvic pain and injury. Hinton sued Boston Scientific, claiming that the Product caused her injuries. She alleges six state-law counts: design defect (Count I); manufacturing defect (Count II); failure to warn (Count III); negligence (Count IV); and breach of express and implied warranties (Counts V and VI). She seeks damages, compensation for economic and non-economic loss, restitution, and disgorgement of the

profits that Boston Scientific reaped through the sale of its pelvic mesh products, as well as her attorneys' fees and costs, and interest. Boston Scientific moves to dismiss Counts II, V, and VI. The court will allow the motion.

## DISCUSSION

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss." *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

**Count II – Manufacturing Defect**

The parties agree that Arkansas law applies to Hinton's claims. A product suffers a manufacturing defect when it "deviat[es] from the norm." *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1054 n.4 (8th Cir. 1996); *see also Simpson v. Wright Med. Grp.*, 2018 WL 1570795, at *9 (E.D. Ark. Mar. 30, 2018) ("Manufacturing defects involve a configuration of a product that deviates from the intended design."). To

adequately plead a manufacturing defect under Arkansas law, Hinton must allege "(1) that the product was defectively . . . manufactured; (2) that the defect was the proximate cause of the damage complained; and (3) that the defect existed at the time the manufacturer parted with possession of the product." *Nicklaus v. Hughes Tool Co.*, 417 F.2d 983, 986 (8th Cir. 1969) (citations omitted).

Hinton points to five paragraphs in the Amended Complaint (FAC) that she believes successfully allege a manufacturing defect. But none of these allegations – nor any other allegation in the FAC – suggests that a flaw in the manufacture of the Product caused Hinton's injuries. The allegations that Hinton identifies point in just the opposite direction. Viz., that the Product has "high rates of failure, injury, and complications" and its "mesh *design characteristics*" have a "propensity" to malfunction. Am. Compl. (Dkt. # 16) ¶¶ 34, 37 (emphasis added); *see also id.* ¶ 14 (polypropylene mesh is "biologically incompatible with human tissue," causing "a severe foreign body reaction and chronic inflammatory response in a large subject of the population"). These allegations simply do not support a claim that *the Product* "deviat[ed] from the norm." *See In re Temporomandibular Joint Implants*, 97 F.3d at 1054 n.4; *see also Bergman v. Johnson & Johnson*, 2021 WL 3604305, at *3 (D. Minn. Aug. 13, 2021) (dismissing manufacturing

3

defect claim because "Plaintiffs have not alleged how the products they received deviated from a correctly-manufactured version of Defendants' pelvic mesh products—or even that they deviated at all.").

The FAC also fails to plead a *res ipsa loquitur* theory of liability (or a *res ipsa*-like theory of strict liability).[1] *Res ipsa loquitur* relieves a plaintiff of the burden of proving a specific defect where "common experience teaches the accident would not have occurred in the absence of a defect." *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 392 (1985). In other words, a plaintiff may rely on circumstantial evidence to "negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise an inference that the dangerous condition existed while the product was still in the control of the defendant." *Strong v. Wynne Outdoor Motorsports, Inc.*, 2005 WL 3475868, at *2 (Ark. Ct. App. Dec. 14, 2005).

A crucial aspect of a *res ipsa* theory is that a finder of fact can rely on her common sense and experience to determine whether an accident would have occurred unless a defect was present. The court finds that the intricacies of pelvic mesh products, including potential complications that

---

[1] "Strictly speaking, . . . res ipsa loquitur has no application to strict liability." *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 392 (1985). However, plaintiffs may rely on circumstantial evidence to prove a strict products liability claim. *Id.*

4

could give rise to a degradation of the Product, "are outside the realm of a juror's everyday experience." *Ruminer v. Gen. Motors Corp.*, 483 F.3d 561, 565 (8th Cir. 2007) (rejecting *res ipsa*-like theory of liability because jurors would be unfamiliar with "the intricacies of occupant protection systems and their potential . . . manufacturing defects"). In any event, the FAC contains no allegations negating potential causes of Hinton's injuries other than a manufacturing defect, for example, an unfortunate surgical mishap.[2] *See Campbell Soup Co. v. Gates*, 319 Ark. 54, 60 (1994) (rejecting *res ipsa* theory where plaintiff failed to "establish[] a direct link to Campbell Soup Company apart from identifying it as the manufacturer."). Count II of the FAC is dismissed.

**Counts V and VI – Breach of Warranties**

To proceed on a breach of warranty claim, Arkansas requires a buyer "within a reasonable time after [s]he discovers or should have discovered any breach [to] notify the seller of [the] breach or be barred from any remedy." Ark. Code § 4-2-607(3)(a). "[T]he giving of notice must be alleged in the complaint in order to state a cause of action." *Williams v. Mozark Fire*

---

[2] As noted, the FAC contains multiple allegations that polypropylene pelvic mesh products frequently cause injuries in patients in whom the products are implanted. But these allegations, which suggest a design flaw, do not provide a basis for Hinton to proceed on a *res ipsa* theory of her manufacturing defect claim.

*Extinguisher Co.*, 318 Ark. 792, 797 (1994); *accord L.A. Green Seed Co. v. Williams*, 246 Ark. 463, 469 (1969). Hinton concedes that she did not provide pre-suit notice to Boston Scientific. But she posits that Arkansas state courts have not definitively decided whether third-party beneficiaries are required to give pre-suit notice and, if Arkansas state courts decided the issue, they would find that such notice was not required.

The court finds several difficulties with this argument. First, although Hinton categorizes herself as a third-party beneficiary in her Opposition, Hinton claimed the converse in the FAC; she alleged that she was induced by Boston Scientific to, and did, purchase the Product and that she was in contractual privity with Boston Scientific. *See* Am. Compl. ¶¶ 117, 120-121, 133, 140. Taking these allegations as true, she is plainly a "buyer" under § 4-2-607.

Second, even if Hinton is a third-party beneficiary of a contract between Boston Scientific and her physician,[3] the Arkansas Supreme Court has implicitly concluded that third-party beneficiaries are still subject to the pre-suit notice rule. In *L.A. Green Seed*, a grower of tomatoes sued a distributor and seller of tomato seeds for breach of warranty. The grower did not purchase the seeds directly from the distributor, and thus was a third-

---

[3] Hinton does not allege in the FAC that such a contract exists.

party beneficiary of the contract between the distributor and the initial consumer. The grower failed to allege pre-suit notice in the complaint, and the court, without expressly considering whether the grower was a "buyer" under § 4-2-607, dismissed the claims for failure to give pre-suit notice. *L.A. Green Seed Co.*, 246 Ark. at 467.

Third, comment 5 to § 4-2-607 states that "even a beneficiary can be properly held to the use of good faith in notifying, once [s]he has had time to become aware of the litigation." Ark. Code Ann. § 4-2-607 cmt. 5. Hinton shrugs this comment off, arguing that "[i]f the Arkansas General Assembly had intended that third-party beneficiaries also be subject to the pre-suit notice requirement, it would have enacted language saying so." Opp'n at 12 n.13. However, "the Arkansas Supreme Court looks to the official comments when interpreting Arkansas's Uniform Commercial Code." *Thomas v. Borg-Warner Morse TEC LLC*, 362 F. Supp. 3d 610, 614 (E.D. Ark. 2018), citing *Cotner v. Int'l Harvester Co.*, 260 Ark. 885, 889 (1977). In fact, in *Cotner*, the Arkansas Supreme Court relied on the official comments in interpreting the exact statute at issue here. 260 Ark. at 889.

The court's conclusion is further bolstered by the fact that the Eastern District of Arkansas has considered the issue on similar fact patterns and multiple times concluded that pre-suit notice is required. *See, e.g.*, *Hufford*

7

*v. Johnson & Johnson*, 2023 WL 3977585, at *2 (E.D. Ark. June 13, 2023); *Perkins v. Johnson & Johnson*, 2022 WL 16838102, at *1 (E.D. Ark. Nov. 9, 2022); *see also Thomas*, 362 F. Supp. 3d at 614 ("A plaintiff pursuing a breach of warranty claim, including a non-buyer beneficiary, must notify the defendant of his intent to enforce the warranty before bringing a lawsuit."). In both *Hufford* and *Perkins*, the plaintiffs underwent hernia mesh surgery, suffered subsequent pain and complications, and sued the manufacturer of the hernia mesh. And in both cases, the Eastern District of Arkansas concluded that the plaintiffs were required to provide Johnson & Johnson with pre-suit notice of their claims. *Hufford*, 2023 WL, 3977585, at *2 (rejecting argument that pre-suit notice requirement applies only to parties in privity of contract); *Perkins*, 2022 WL 16838102, at *1 (requiring pre-suit notice without analysis of the privity question).

Finally, even if the issue might be susceptible to some doubt, "[a] federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal." *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994). "[L]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed." *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731,

8

744 (1st Cir. 1990); *Federico v. Order of Saint Benedict in Rhode Island*, 64 F.3d 1, 4 (1st Cir. 1995) (same).

All this taken together, the court concludes that Hinton was required to provide Boston Scientific pre-suit notice of her breach of warranty claims. As she failed to do so, Counts V and VI are dismissed.

## ORDER

For the foregoing reasons, Boston Scientific's motion to dismiss Counts II, V, and VI of the FAC is <u>ALLOWED</u>.  The court hereby <u>DISMISSES WITH PREJUDICE</u> Counts II, V, and VI.

                                      SO ORDERED.

                                      /s/ Richard G. Stearns_____
                                      UNITED STATES DISTRICT JUDGE